UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**NEW VIASYS HOLDINGS, LLC,**

    **Plaintiff,**

v.                                                  Civil Action No. 2:06cv488

**THE HANOVER INSURANCE CO.,**

    **Defendant.**

## OPINION AND ORDER

Currently before the court is the defendant's Motion for Summary Judgment, filed with attached memorandum in support. After examination of the briefs and record, this court determines that oral argument is unnecessary because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. The court, for the reasons stated fully herein, **GRANTS** the defendant's motion for summary judgment.

I. Factual Background

This matter arises out of a highway construction project undertaken by the plaintiff's predecessors in interest. In April of 1999, two entities, Transportation Safety Contractors, Inc., and Georgia Electric Company, formed a joint venture[1] and submitted a bid, which was

---

[1]The plaintiff claims to be the successor-in-interest to both Transportation Safety and Georgia Electric. According to the plaintiff, Transportation Safety changed its name to Viasys Services, Inc., in 2003, and Georgia Electric merged into Viasys Services in 2004. See Plaintiff's Response to Motion for Summary Judgment at 3 n.2. The plaintiff avers that it is an assignee of Viasys Services, and therefore has standing to bring the instant action against the defendant. See Affidavit of Steven Palmer, Exhibit A to Plaintiff's Response to Motion for Summary Judgment,

subsequently accepted, on a project with the Virginia Department of Transportation (VDOT) involving work on highways in the Hampton Roads area of Virginia. The plaintiff had previously, on March 24, 1999, contracted with Vultron, Inc. via a purchase order in the amount of $2.855 million. Vultron was to supply the plaintiff with 93 variable message signs, related equipment, training, and technical support for use in the VDOT project. As required by the purchase order, Vultron furnished a supply bond issued by the defendant, as surety, which named the plaintiff as its obligee. See Exhibit 1B to Motion for Summary Judgment.

The bond permits the plaintiff to, in the event of default by Vultron, proceed against the defendant. However, the plaintiff's rights are limited by a number of conditions precedent. Significantly, the bond provides:

> [I]t shall be a condition precedent to any right of recovery hereunder, that in the event of any default on the part of the Principal, a written statement of the particular facts showing the date and nature of such default shall be immediately delivered to the Surety by registered mail at its principal office in Worcester, Massachusetts.
> AND PROVIDED FURTHER, that no action, suit or proceeding shall be had or maintained against the Surety on this instrument unless the same be brought or instituted and process served upon the Surety within twelve months after the Principal ceases work under said contract.

Id. (emphasis in original).

The parties seem to agree that, beginning in August of 2003, Vultron began to fall behind on its obligations to the plaintiff under the purchase order. Over the course of the next 13 months, the plaintiff attempted to permit Vultron to cure its defaults under the purchase order; however, this was ultimately unsuccessful. On September 17, 2004, the plaintiff sent a letter to

---

at ¶ 3. Although the defendant does not challenge the plaintiff's standing via the instant motion, it appears to reserve the right to raise that objection at a later point. See Memorandum in Support of Motion for Summary Judgment at 4 n.4. Therefore, the court will refer to the plaintiff or its alleged predecessors-in-interest as "the plaintiff."

the defendant, indicating the date and nature of Vultron's defaults under the purchase order. Letter of September 17, Exhibit 3A to Motion for Summary Judgment.

The plaintiff and the defendant then engaged in correspondence in an apparent effort to resolve the plaintiff's claim under the bond. The defendant retained the services of outside legal counsel, and hired a consulting firm in order to better help it assess the technical aspects of the plaintiff's claims of default. During this time, Vultron was apparently working to cure its defaults, and as of June 1, 2005, all but five of the ninety-three signs had been transferred to Virginia for installation. The remaining five signs were transferred by August 26, 2005. According to the plaintiff, Vultron continued to perform work required under the purchase order through May of 2006, including the provision of technical support for the variable message sign controllers.

II. Procedural History

On August 29, 2006, the plaintiff filed suit in this court against the defendant and the Massachusetts Bay Insurance Company, which was subsequently dismissed by motion of the plaintiff. On September 25, 2006, the defendant moved to refer the proceedings to bankruptcy court in Michigan, where Vultron had declared bankruptcy, or in the alternative, to stay or dismiss the proceedings pending the outcome of Vultron's bankruptcy proceedings. The parties resolved their dispute over the plaintiff's claims in the Vultron bankruptcy, and thereby agreed to proceed with the litigation in this court. On January 26, 2007, the defendant filed the instant motion, arguing that summary judgment was appropriate because the plaintiff had failed to meet the conditions precedent for recovery under the bond, to wit: that notice of Vultron's default was not immediately delivered via registered mail to the defendant, and that the plaintiff did not serve

the defendant with process in the instant action within twelve months of Vultron ceasing work under the purchase order. The plaintiff filed its response on February 8, 2007, and the defendant replied on February 16. The matter is now ripe for consideration.

III. Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is only appropriate when the court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exist no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). Once a party has properly filed evidence supporting the motion for summary judgment, the non-moving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. Celotex Corp., 477 U.S. at 322-24. Such facts must be presented in the form of exhibits and sworn affidavits. Failure by the plaintiff to rebut defendant's motion with such evidence will result in summary judgment. "[T]he plain language of Rule 56 mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Although the moving party bears the initial burden of stating the basis for its motion, that burden can be discharged if the moving party can show "an absence of evidence to support the non-moving party's case." Id. at 323, 325. After the moving party has discharged the burden, the non-moving party must then designate specific facts showing that there is a genuine issue of material fact. Id. at 324.

To enter summary judgment, a court does not need to determine that there are no factual issues in dispute. To find against the moving party, however, the court must find both that the facts in dispute are material and that the disputed issues are genuine. A factual dispute is deemed to be material if it is dispositive of the claim. See Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). Similarly, a factual dispute is considered genuine if it is based on more than speculation or inference. Celotex Corp., 477 U.S. at 327; Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 164 (4th Cir. 1997) (en banc), overruled on other grounds by Bragdon v. Abbott, 524 U.S. 624 (1998).

While it is the movant's burden to show the absence of a genuine issue of material fact, Pulliam Inv. Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987), it is the non-movant's burden to establish the existence of such an issue. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. To survive summary judgment, the non-moving party must present evidence that is "significantly probative." Celotex Corp., 477 U.S. at 327.

IV. Analysis

A. Notice Requirement

The defendant avers that summary judgment is warranted in its favor because the plaintiff breached the notice provision that was part of the bond, which required that notice of any default on the part of Vultron be provided immediately in writing to the defendant. It is undisputed that the first notice provided to the defendant of Vultron's default was in a letter sent by the plaintiff

on September 17, 2004.[2] The plaintiff freely admits that, beginning in August of 2003, Vultron was defaulting on its responsibilities under the purchase order. The defendant claims, therefore, that the plaintiff's delay of more than one year in providing the defendant with notice of Vultron's defaults cannot, as a matter of law, constitute "immediate" notice, as required by the bond.

The plaintiff, in response, claims merely that the defaults of which it complains occurred at several times beginning in August of 2003 and continuing through September 2004. However, the language of the bond is clear, and requires, as a condition precedent to coverage under the bond, that the defendant receive immediate notice of <u>any</u> default on the part of Vultron. The term "immediate" or "immediately" has been construed, in the context of surety bonds, as requiring notice within a reasonable time. <u>See, e.g.</u>, <u>Fid. & Deposit Co. of Md. v. Courtney</u>, 186 U.S. 342, 346-47 (1902). The bond in this case, then, expressly required that the defendant receive notice within a reasonable time as a condition precedent to coverage.

It is clear, then, that the plaintiff breached this condition precedent to coverage by failing to provide notice of Vultron's defaults to the defendant within a reasonable time. That the plaintiff itself believed Vultron to be in default beginning in August of 2003 is plainly evident from the exchange of letters between the plaintiff and Vultron from August 25, 2003 until September 17, 2004, wherein the plaintiff repeatedly demanded that Vultron correct problems with the materials it had supplied under the purchase order and expressed increasing frustration at Vultron's failure to take actions it deemed appropriate. <u>See</u> Correspondence Between Plaintiff

---

[2]The defendant also avers that this letter, which was not sent via registered mail, is not in accord with the requirements of the bond. Finding, however, that the notice of default given was not timely, the court declines to address this allegation in the motion for summary judgment.

and Vultron, Exhibit 3 to Affidavit of Steven Palmer, Exhibit A to Plaintiff's Response to Motion for Summary Judgment. Further, the letters contain repeated threats on the part of the plaintiff to notify Vultron's surety, the defendant, that the plaintiff would be filing a claim on the bond. Id. Indeed, the plaintiff does not dispute that it considered Vultron to be in default beginning in August of 2003. See Plaintiff's Response to Motion for Summary Judgment at 4 ("At various times from August 25, 2003 through September 17, 2004, Viasys provided Vultron with written notice of outstanding issues under the Purchase Order and with the opportunity to cure its defaults.") (emphasis added).

That the notice provision should be given its desired effect is clear from both general principles of contract interpretation, see, e.g., Pysell v. Keck, 263 Va. 457, 460 (2002) (contracts are generally subject to certain familiar rules of construction "including the application of the plain meaning of unambiguous contractual terms"), and from case law specifically on point. In New Amsterdam Cas. Co. v. U.S. Shipping Bd. Emergency Fleet Corp., 16 F.2d 847 (4th Cir. 1927), the Fourth Circuit addressed an attempt by a surety to a claim that it had not been given proper notice of the default of its principal. In finding that the notice that had been given was valid, the court specifically noted that "the giving of such notice was not included among the conditions of the bond." Id. at 851. Further, the court indicated:

> We have carefully considered the authorities relied upon by defendant, but we do not thing that they have any application to a case such as this. They hold that failure to give notice of default in accordance with the terms of a condition contained in a fidelity or indemnity bond releases the surety from further liability thereunder. There can be no question that such is the law, but, as pointed out above, the bond sued on in this case does not incorporate a requirement for notice of default among the conditions of the bond. In those cases notice of default was provided as a condition of liability, doubtless because the liability of the surety was contingent upon the bad faith or breach of contract of the principal which would be exclusively within the knowledge of the obligee, and, if there

>was to be a claim of liability, the surety desired prompt notice, so that it might investigate the circumstances upon which its liability was to depend.

Id. It is clear, then, that the contractual requirement of notice within a reasonable time is both valid and enforceable, and further, that the plaintiff failed in the instant case to comply with it. Such a failure constitutes a breach of a condition precedent to coverage under the bond, relieving the defendant of its obligations under the bond.

The plaintiff argues that, because the rule of strictissimi juris[3] does not apply to contracts involving compensated sureties, "it is right, therefore, to say that [sureties] must show injury done to them before they can ask to be relieved from contracts which they clamor to execute." Atl. Trust & Deposit Co. v. Laurinburg, 163 F. 690, 696 (4th Cir. 1908). However, the plaintiff has cited–and the court has been able to locate–no case applying Virginia law in which a court held that surety must demonstrate that it sustained actual prejudice when notice was made an explicit condition precedent to coverage. Further, even were the defendant required to demonstrate prejudice from the plaintiff's failure to provide it with timely notice, the defendant has indicated that the thirteen-month delay hindered "its ability to investigate, evaluate and mitigate the issues and potential damages, to preserve evidence, and to adequately and immediately protect its common law and contractual rights vis-a-vis its principal and indemnitors under the indemnity agreement." Defendant's Reply Memorandum at 9.

The plaintiff is indeed correct that the bond in this case is not a performance bond, but

---

[3]Strictissimi juris is a legal term meaning "of the strictest right or law; to be interpreted in the strictest manner." Black's Law Dictionary 1435 (7th ed. 1999). In the context of suretyship, courts have applied the principle to interpret surety contracts strictly in favor of uncompensated sureties. See, e.g., Bd. of Sup'rs of Fairfax County v. Southern Cross Coal Corp., 238 Va. 91, 94 (1989).

rather an indemnity bond, and therefore the defendant was not obligated to complete Vultron's responsibilities under the purchase order. The plaintiff is incorrect, however, in suggesting that the notice requirement is of less significance in the instant case simply because the defendant was not charged with completing performance of the contract. In fact, as the defendant notes, the damages claimed by the plaintiff have continued to increase. Had the defendant been given notice of Vultron's defaults within a reasonable time, it could have taken action to mitigate the damages. Therefore, the defendant has shown prejudice it sustained as a result of the failure of the plaintiff to comply with this condition of the bond.[4]

To the extent that the plaintiff claims that the defense of lack of timely notice is precluded by estoppel and/or waiver, the court disagrees. Equitable estoppel, under Virginia law, applies "when one person, by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely upon those statements, etc., and who does rely upon them in good faith, to believe in the existence of the state of facts with which they are compatible, and act upon that belief." Thomasson v. Walker, 168 Va. 247, 256 (1937). In such a case, "the former will not be allowed to assert, as against the latter, the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby." Id. Here, the facts demonstrate that the defendant was not on notice of the defaults of its principal until September of 2004, at which point the

---

[4] The plaintiff raises the issue that the defendant appears to have waited eleven months after receiving notice to make a demand upon Vultron to complete its work under the purchase order and take other action to protect itself against a possible claim on the bond. However, this does not change the fact that, for thirteen months, the defendant had no notice of Vultron's defaults, and therefore no possibility to take any preventative action. At the time the defendant finally did receive notice from the plaintiff, the prejudice had already accrued.

provision in the bond requiring notice within a reasonable time had already been breached. Because any claim of estoppel on the facts before the court would require, <u>a priori</u>, that the defendant had notice of Vultron's defaults, such a claim must fail where, as here, no such notice was provided.  Further, the defendant expressly reserved any rights it had in the letter it sent to the plaintiff in response to receiving notice of Vultron's defaults.  October 8 Letter from Defendant to Plaintiff, Exhibit 4 to Affidavit of Steven Palmer, Exhibit A to Plaintiff's Response to Motion for Summary Judgment ("Nothing in this letter should be construed by you to waive or alter any of the rights of the parties involved.").  Indeed, that letter also raised the issue of timely notice, stating that, "[a]s condition precedent to a claim under the bond, the obligee must put the surety on immediate notice for any default on the contract."  <u>Id.</u>  Therefore, the defendant is not precluded by estoppel or waiver principles from raising the defense of breach of the notice requirement.

B.  Limitations Period

Because the court has found summary judgment appropriate on the basis of the failure of the plaintiff to provide timely notice to the defendant of Vultron's defaults, it declines to reach the issue of whether plaintiff did not file suit within the limitations period specified in the bond.

V.  Conclusion

Because there are no genuine issues of material fact upon which a jury might base a finding in the plaintiff's favor, and because the defendant is entitled to judgment as a matter of law by virtue of the plaintiff's breach of a clear, unambiguous, and explicit condition precedent to coverage under the bond, the court **GRANTS** the defendant's motion for summary judgment with respect to all of the plaintiff's claims.  The plaintiff's claims are **DISMISSED**.

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record for all parties.

It is so **ORDERED**.

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

March 12, 2007
Norfolk, Virginia